UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SALLY DIXON,

                              Plaintiff,

          v.                                          **DECISION AND ORDER**

                                                      22-CV-131S

DOLLAR TREE STORES, INC.,

                              Defendant.

## I.    Introduction

In this employment discrimination action, Plaintiff Sally Dixon ("Dixon") alleges sex and age discrimination against Defendant Dollar Tree Stores, Inc. ("Defendant" or "Dollar Tree") in violation of Title VII, the Age Discrimination in Employment Act ("ADEA"), and the New York State Human Rights Law ("NYSHRL").  Dixon claims being a victim of sexual harassment and retaliatory termination.

Before this Court is Defendant's Motion to Compel Arbitration or to Dismiss (Docket No. 3[1]).  Dollar Tree Stores invokes its Arbitration Agreement with Dixon (and its other employees) (Docket No. 3, Steven Pearson Decl. Ex. B, Mutual Agreement to Arbitrate Claims (For Associates Hired Before October 6, 2014) (or "Arbitration Agreement")) and seeks dismissal of this case in favor of arbitration of her claims.

---

[1]In support of its Motion, Defendant submits the Declaration of Steven Pearson, field labor and budget director of Dollar Tree Stores, with exhibits; its Memorandum of Law, Docket No. 3; and its Reply Declaration, Docket No. 11.

Plaintiff opposes with her Notice of her opposition, Docket No. 8, and Memorandum of Law, with exhibit, Plaintiff's Declaration, Docket No. 7.

For the following reasons, Defendant's Motion to Compel Arbitration (Docket No. 3) of Dixon's present claims is granted as is its Motion to Dismiss (id.), and this case is dismissed.

## II.    Background

### A.  Factual Allegations

This Court assumes the truth of the following factual allegations contained in the Complaint.   See Hospital Bldg. Co. v. Trustees of Rex Hosp., 425 U.S. 738, 740, 98 S.Ct. 1848, 48 L.Ed.2d 338 (1976).

Defendant hired Dixon in February 2013 as an Associate at its Geneseo, New York, store, promoting her in 2014 to store manager (Docket No. 1, Compl. ¶¶ 7, 8; see Docket No. 3, Pearson Decl. ¶ 8; Docket No. 3, Def. Memo. at 1).

From 2017, Dixon complained to Defendant's management about inappropriate contacts she had with installation contractors hired by Defendant which she deemed to be instances of sexual harassment.   Defendant's managers, however, dismissed her complaints.  (Docket No. 1, Compl. ¶¶ 9-15, 17-18, 28-36, 61, 62, 65.)

Dixon then claims that Defendant's management engaged in a campaign of retaliation against her.   Dollar Tree's management allegedly cited Dixon for work infractions (criticizing Dixon's mode of dress, making suggestive comments about her attire, and falsely placing negative statements in her annual performance review) while not citing male or younger female employees for their infractions.  (Id. ¶¶ 37-38, 40-43, 45, 46-50, 51-56, 57, 58, 59-60.)   In May 2020 Defendant issued a performance evaluation and Dixon completing some cited performance items, on June 26, 2020,

Defendant abruptly terminated her, purportedly in violation of Defendant's own disciplinary procedures (id. ¶¶ 70, 76-82, 84-86, 90).

The Complaint alleges six counts:

- Count I, sexual harassment and sex discrimination in violation of Title VII.

- Count II, sexual harassment, age discrimination, and sex discrimination each in violation of the NYSHRL.

- Count III, age discrimination under the ADEA.

- Count IV, retaliation under Title VII.

- Count V, retaliation under the NYSHRL; and

- Count VI, retaliation under the ADEA.

(Id. ¶¶ 101-08, 109-17, 18-26, 127-34, 135-41, 142-48.)

      B.  Dollar Tree Employment Arbitration Agreement

Meanwhile in 2015, Defendant instituted an arbitration program wherein it and its Associates (hired before October 6, 2014, like Dixon) arbitrated claims arising "under applicable federal, state, or local law, arising out of or related to [Plaintiff's] employment (or its termination)" that either party may have with the other (Arbitration Agreement at 1; Docket No. 3, Def. Memo. at 2).  The Arbitration Agreement did not require the employee's agreement but provided for an Associate opt out if she took affirmative steps to decline being bound by the agreement.  To opt out, the employee needed to complete either an online opt out form or mail a paper opt out form to Defendant's office.  (Arbitration Agreement at 4; see Docket No. 11, Def. Reply Memo. at 1.)  The employee's decision not to opt out by May 31, 2015, constituted her assent to the Arbitration Agreement (Arbitration Agreement at 5).

On February 23, 2015, Defendant emailed Dixon instructions regarding the Arbitration Agreement, including a copy of the Agreement and frequently asked questions fact sheet about the Agreement (Docket No. 3, Pearson Decl. ¶¶ 9, 10, Ex. A).  Dixon acknowledged receipt of the Agreement on May 4, 2015 (id. ¶ 14, Ex. E), but Dixon never opted out of that Agreement (id. ¶ 15).

Dixon explains that she was not aware that Defendant's arbitration program included her (Docket No. 7, Pl. Memo. Ex., Pl. Decl. (or "Pl. Decl.") ¶¶ 3-4).  After receiving a reminder email to acknowledge receipt of the Agreement, Dixon contacted her supervisor, Michelle Cavalli, to refuse signing the Agreement (Pl. Decl. ¶¶ 6-7).  Ms. Cavalli later insisted Dixon sign the acknowledgement form for the Agreement (id. ¶¶ 8, 10-11).  Dixon believes that Ms. Cavalli "seemingly refused to allow [Dixon] to leave the store until" Dixon signed the acknowledgement (id. ¶ 13).  Dixon repeated her refusal to sign the Agreement but eventually did (under "Cavalli's pressure") signed the acknowledgement (id. ¶¶ 14, 15).  Dixon further claims she also never received a copy of the rules of Judicial Arbitration and Mediation Services (or "JAMS"), the arbitral body designated under the Agreement (id. ¶¶ 21, 22).

### III.   Discussion

#### A.  Applicable Standards

##### 1. Motion to Dismiss

Defendant has moved to dismiss on the grounds that the Complaint fails to state a claim for which relief can be granted based upon the Arbitration Agreement (Docket No. 3).  Under Rule 12(b)(6), the Court cannot dismiss a Complaint unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which

would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), a Complaint must be dismissed pursuant to Rule 12(b)(6) if it does not plead "enough facts to state a claim to relief that is plausible on its face," id. at 570 (rejecting longstanding precedent of Conley, supra, 355 U.S. at 45-46).

To survive a Motion to Dismiss, the factual allegations in the Complaint "must be enough to raise a right to relief above the speculative level," Twombly, supra, 550 U.S. at 555; Hicks, supra, 2007 U.S. Dist. LEXIS 39163, at *5. A Rule 12(b)(6) Motion is addressed to the face of the pleading. The pleading is deemed to include any document attached to it as an exhibit, Fed. R. Civ. P. 10(c), or any document incorporated in it by reference. Goldman v. Belden, 754 F.2d 1059 (2d Cir. 1985).

In considering such a Motion, the Court must accept as true all the well pleaded facts alleged in the Complaint. Bloor v. Carro, Spanbock, Londin, Rodman & Fass, 754 F.2d 57 (2d Cir. 1985). However, conclusory allegations that merely state the general legal conclusions necessary to prevail on the merits and are unsupported by factual averments will not be accepted as true. New York State Teamsters Council Health and Hosp. Fund v. Centrus Pharmacy Solutions, 235 F. Supp. 2d 123 (N.D.N.Y. 2002).

### 2.  Federal Arbitration Act

The Federal Arbitration Act, 9 U.S.C. §§ 1, et seq., favors arbitration agreements, 9 U.S.C. § 2; CompuCredit Corp. v. Greenwood, 565 U.S. 95, 98, 132 S.Ct. 665, 181 L.Ed.2d 586 (2012); Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,

460 U.S. 1, 24,103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (Docket No. 3, Def. Memo. at 3). As Defendant Dollar Tree has done a litigant can petition this Court for an Order directing arbitration pursuant to the parties' agreement, 9 U.S.C. § 4; <u>see</u> <u>Nicosia v. Amazon.com, Inc.</u>, 834 F.3d 220, 229 (2d Cir. 2016).

In deciding a Motion to Compel Arbitration, this Court must determine (1) the existence of a valid arbitration agreement; (2) whether the claims sought to be arbitrated fall within the scope of that arbitration agreement; (3) whether Congress intended federal statutory claims to be non-arbitrable; and (4) if some, but not all, of the claims are arbitrable, whether to stay the balance of the proceeding pending arbitration, <u>Abdullayeva v. Attending Homecare Servs. LLC</u>, 928 F.3d 218, 221-22 (2d Cir. 2019) (citing <u>JLM Indus. v. Stolt-Nielsen SA</u>, 387 F.3d 163, 169 (2d Cir. 2004)) (Docket No. 3, Def. Memo. at 3).  "A standard similar to the summary judgment standard applies to motions to compel arbitration," <u>Pool Deals, LLC v. United Parcel Service, Inc.</u>, 454 F. Supp. 3d 208, 213 (W.D.N.Y. 2020) (Sinatra, J.), with all reasonable inferences are drawn in favor of the opponent to compelled arbitration, <u>Nicosia</u>, <u>supra</u>, 834 F.3d at 229 (Docket No. 7, Pl. Memo. at 3 & n.1).

Any doubts of the arbitrability of a claim are resolved in favor of arbitration, <u>DDK Hotels, LLC v. Williams-Sonoma, Inc.</u>, 6 F.4th 308, 317 (2d Cir. 2021), quoting <u>First Options of Chi., Inc. v. Kaplan</u>, 514 U.S. 938, 944-45, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) (Docket No. 3, Def. Memo. at 3); <u>see</u> <u>Moses H. Cone</u>, <u>supra</u>, 460 U.S. at 24-25. Courts thus "will compel arbitration unless 'the arbitration clause is not susceptible of an interpretation that covers the asserted dispute,'" <u>Pool Deals, LLC</u>, <u>supra</u>, 454 F. Supp. 3d at 213, <u>quoting</u> <u>Daly v. Citigroup, Inc.</u>, 939 F.3d 415, 421 (2d Cir. 2019).

The party seeking arbitration bears the burden of demonstrating that an agreement to arbitrate was made, Hines v. Overstock.com, Inc., 380 F. App'x 22, 24 (2d Cir. 2010) (summary Order); Barrows v. Brinker Rest. Corp., 36 F.4th 45, 50 (2d Cir. 2022), by merely by showing the agreement's existence, Barrows, supra, 36 F.4th at 50. Whether the parties entered into an arbitration agreement is substantive issue resolved under state contract law of the forum, here New York law, id.

Once claims are found to be subject to arbitration, this Court has the choice of staying the action pending arbitration or dismissing the case, Nicosia v. Amazon.com, Inc., 384 F. Supp. 3d 254, 277 (E.D.N.Y. 2019) (granting motions to compel arbitration and dismiss the case) (Docket No. 3, Def. Memo. at 6), aff'd, 815 F. App'x 612 (2d Cir. 2020) (summary Order), motion for relief from judgment denied, No. 14CV4513, 2021 WL 4480487 (E.D.N.Y. Sept. 30, 2021), aff'd, No. 21-2624-cv, 2023 WL 309545 (2d Cir. Jan. 19, 2023).  Section 3 of the Federal Arbitration Act permits staying an action subject to arbitration but a court may dismiss the action in that circumstance upon defendant (who seeks arbitration) requesting dismissal, 9 U.S.C. § 3; Nicosia, supra, 384 F. Supp. 3d at 277 (dismissing case after granting order to compel arbitration).

Congress also enacted the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 (effective Mar. 3, 2022) to bar compelled arbitration of allegations of sexual abuse or harassment, Pub. L. No. 117-90 (codified at 9 U.S.C. §§ 401-402) ("EFASA").  At the election of the person alleging a sexual harassment or sexual assault dispute, "no predispute arbitration agreement . . . shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and

7

relates to the sexual assault dispute or the sexual harassment dispute," 9 U.S.C. § 402(a); see id. § 401(1) (defining a "predispute arbitration agreement").

B.  Parties' Contentions

Defendant asserts its Arbitration Agreement was valid and enforceable upon Dixon because she received the Agreement, did not opt out from it, and continued to work for Dollar Tree under the Agreement (Docket No. 3, Def. Memo. at 4-5), Boves v. Aaron's Inc., No. 18 Civ. 5 (HBP), 2019 WL 1206698, at *4 (S.D.N.Y. Mar. 14, 2019). Defendant argues that Dixon's claims fall within the ambit of the Arbitration Agreement and were not precluded by federal or state law sources for those claims (id. at 5-6), 14 Penn Plaza LLC v. Pyett, 556 U.S. 247, 258, 129 S.Ct. 1456, 173 L.Ed.2d 398 (2009) (ADEA does not preclude arbitration); Parisi v. Goldman, Sachs & Co., 710 F.3d 483, 487 (2d Cir. 2013) (Title VII does not preclude arbitration); Hamzaraj v. ABM Janitorial Northeast Inc., No. 15 Civ. 2030 (ER), 2016 WL 3571387, at *4 (S.D.N.Y. June 27, 2016) (Title VII and New York Human Rights Law do not preclude arbitration).

Recognizing this Court's discretion in deciding whether to dismiss an arbitrated case or stay it, Defendant urges dismissal of this case because all asserted claims here would be subject to arbitration (id. at 6-7), see Rubin v. Sona Int'l Corp., 457 F. Supp. 2d 191, 198 (S.D.N.Y. 2006) (where all issues in complaint must be submitted to arbitration, case may be dismissed rather than stayed).

Dixon responds that she never agreed to the Arbitration Agreement (Docket No. 7, Pl. Memo.).  To determine whether there was an agreement in effect under New York law, Dixon asserts that a party is not bound to arbitrate if she has not agreed to do

so and cannot be forced to arbitrate (id. at 4, 4 n.7), see Barrows, supra, 36 F.4th at 50. She further calls this Agreement an unenforceable contract of adhesion (id. at 7-9).

Dixon next invokes the EFASA and New York law, N.Y. CPLR 7515(b)(i), to preclude compelled or mandatory arbitration of her sexual harassment claims (id. at 9-10, 11). Despite acknowledging its preemption by federal law, Dixon contends that the enactment of EFASA abrogates federal preemption arguments of CPLR 7515(b)(i) (id. at 11).

Alternatively, if her claims are subject to arbitration, Dixon urges staying this action rather than dismissing it (id. at 11-12).

Defendant replies that Dixon consented to the Arbitration Agreement by failing to opt out and continuing to work for Dollar Tree. Further, Dixon did not need to sign the Agreement to be bound to its terms. (Docket No. 11, Def. Reply Memo. at 1-3, 4.) Under New York law, an employee working after issuance of an arbitration agreement without opting out effectively agrees to that arbitration provision by failing to opt out, Boves, supra, 2019 WL 1206698, at *4 (id. at 2). Defendant observes that Dixon cites cases from other states (but not New York or the Second Circuit) that are not binding precedent upon this Court, concluding that Dixon concedes that she is bound by the Arbitration Agreement under New York law (id.).

Defendant next denies that its Arbitration Agreement is unconscionable, in part because the Agreement compels Defendant and Dixon (and other Dollar Tree employees) to arbitrate their respective disputes (id. at 3-4).

Absent EFASA and federal preemption, Defendant finally rejects applicability of CPLR 7515 because the amendment that added CPLR 7515 was effective July 11, 2018, 2018 N.Y. Laws, ch. 57, pt. KK, § 1, after the accrual of Dixon's claims (id. at 7).

    C.  Motion to Compel Arbitration

        1.  Validity and Applicability of Dollar Stores Arbitration Agreement

The Federal Arbitration Act favors arbitration (save compelled sexual harassment disputes after the effective date of EFASA, 9 U.S.C. §§ 401-402).  Considering the factors for compelling arbitration, Abdullayeva, supra, 928 F.3d at 221-22, Dixon first challenges the validity of the Arbitration Agreement because she never signed it and consistently refused to accept it (Docket No. 7, Dixon Decl. ¶¶ 6-7, 14, 16-17, 23-24). The terms of the Arbitration Agreement, however, does not require an employee's signature.  Assent to that Agreement arises from Dixon not opting out of it by the stated deadline and continuing to work for Defendant (Arbitration Agreement at 5).  Dixon here did not execute and submit an opt out form, the only way she could avoid arbitration while remaining employed with Defendant.

Although Dixon denies reading the Agreement (cf. Docket No. 7, Dixon Decl. ¶ 6) she admits to receiving the Agreement (id. ¶ 14).  The Agreement applied to Dollar Tree Associates hired before October 6, 2014, like Plaintiff (Arbitration Agreement at 1).  The Agreement did not exclude store management.  As a manager, she was familiar with the Agreement as it applied to sales associates in her store (see Docket No. 7, Dixon Decl. ¶¶ 2-3).  Dixon received the Agreement in February 2015 and submitted the acknowledgement of receipt form in May 2015; thus, she had the Agreement (or at least was aware of it) for three months.  She received the Agreement, did not execute an opt

out or attempt to do so (instead she voiced her objections to her supervisor), and continued to work for Defendant under the terms of the Agreement.  Dixon's verbal rejection did not affect an opt out from the Agreement.  Defendant merely pressed Dixon to sign the acknowledgement of receipt.

Dixon next objects that she never received a copy of the JAMS rules (id. ¶ 22; Docket No. 7, Pl. Memo. at 2, 8).  The Agreement and its frequently asked questions form, however, each contain website references to the JAMS rules (Arbitration Agreement at 2; Docket No. 3, Pearson Decl. Ex. C, Frequently Asked Questions at 1). Under that Agreement, Defendant also was to provide a written copy of those rules upon an emailed request for them (Arbitration Agreement at 2; Docket No. 3, Pearson Decl. Ex. C, Frequently Asked Questions at 1).  Dixon, however, never wrote requesting the JAMS rules.

Dixon next argues that the Agreement is an unenforceable contract of adhesion (Docket No. 7, Pl. Memo. at 6-9).  Putting to one side cases from jurisdictions other than New York (or federal cases applying New York law) (cf. Docket No. 11, Def. Reply Memo. at 2), Dixon cites Fleischmann Distilling Corp. v. Distillers Co. Ltd., 395 F. Supp. 221, 232 (S.D.N.Y. 1975) (Docket No. 7, Pl. Memo. at 7).  The court in Fleischmann Distilling referenced there New York Uniform Commercial Code, N.Y. U.C.C. § 2-302, and concluded that a finding of unconscionability is mandated "only where there is an absence of meaningful choice for one party plus contract terms which unreasonably favor the other party," Fleischmann Distilling, supra, 395 F. Supp. at 232 (footnote omitted).  Further, an absence of "meaningful choice" turns on contract formation, whether high pressure or deceptive sales practices were utilized or if there was gross

inequality of bargaining power, id. (citing Nu Dimensions Figure Salons v. Becerra, 73 Misc. 2d 140, 340 N.Y.S.2d 268 (N.Y. Civ. Ct. Queens Cnty. 1973)).  There, that court also was not convinced of the unconscionability of the arbitration agreement, merely finding that defendants had superior bargaining power as opposed to oppressive actions, Fleischmann Distilling, supra, 395 F. Supp. at 230 n.14.

As for the procedural aspect of unconscionability and formation of the Arbitration Agreement, see Nu Dimensions, supra, 73 Misc. 2d at 143, 340 N.Y.S.2d at 272 (see also Docket No. 7, Pl. Memo. at 7), Dixon fails to show she lacked a meaningful choice. Dixon had the choice of accepting (by inertia) or opting out of the Agreement.  She had a window of time to opt out but did not exercise it.   As for the substantive unconscionability of the terms of the Agreement, id., Dixon also fails to show unilateral terms.  The arbitration compelled under the Agreement applies to both Dixon (or any other Dollar Tree employee) and Dollar Tree.  "Generally, 'arbitration agreements that bind both parties to arbitration may not be said to favor the stronger party unreasonably,'" Brennan v. Bally Total Fitness, 198 F. Supp. 2d 377, 384 (S.D.N.Y. 2002) (quoting Desiderio v. National Ass'n of Sec. Dealers, 191 F.3d 198, 207 (2d Cir. 1999), cert. denied, 531 U.S. 169, 121 S.Ct. 756, 148 L.Ed.2d 659 (2001)).

Dixon also cites Brennan and the discussion there whether the employee dispute resolution contract was one of adhesion and unconscionable because of the lack of sufficient time for the employees to review its terms (Docket No. 7, Pl. Memo. at 7, citing Brennan, supra, 198 F. Supp. 2d at 382-83, 384).  Dixon, however, had ample time to review the terms of Dollar Tree's Arbitration Agreement, since she had three months to review it before deciding whether to opt out from it.

In <u>Brennan</u>, plaintiff Kathryn Brennan alleged being sexually harassed by her manager but her employer, Bally Total Fitness, took no remedial action, <u>id.</u> at 379. Brennan and other Bally Total Fitness's employees were given only 15 minutes to review a 16-page document containing Bally Total Fitness's procedures for bringing discrimination claims.  Bally Total Fitness also engaged in other pressure tactics to have them sign its agreement (such as requiring signatures at the meeting presenting it and denying promotions to employees who did not sign).  <u>Id.</u> at 382-83, 379-80.

Dixon, however, has not alleged coercion by Dollar Tree to sign the Arbitration Agreement or sanctions if it remained unsigned.   Defendant never sought Dixon's signature on that Agreement but merely asserted pressure in having her acknowledge receipt thereof.   Defendant also did not prevent opting out or coerce Dixon to not exercise her opt out from the Agreement.

Dixon had ample opportunity to review these terms thus the Agreement is not an adhesion contract.  The Arbitration Agreement is binding upon both Dixon and Dollar Tree.  Thus, it is not unconscionable to enforce the terms of this Arbitration Agreement. Dollar Tree has met its burden demonstrating that it made an enforceable Arbitration Agreement with Dixon.

### 2.  Scope of Arbitration and Intent to Arbitrate Claims

On whether her claims fall within the scope of the Arbitration Agreement, Dixon asserts claims under federal or state law arising from Dixon's employment and its termination (<u>see</u> Arbitration Agreement at 1).   That Agreement lists examples of subjects for arbitration that include claims Dixon now raises, such as "wrongful termination; retaliation or discrimination (including, but not limited to, . . . sex, . . .

age . . .)" or "violation of any federal, state, local or governmental law" (id.).  Her claims, therefore, are within the ambit of that Agreement.

As to whether Congress intended arbitration for Dixon's federal statutory claims, prior to March 2022, all discrimination claims under Title VII and the ADEA (including sexual harassment claims) were arbitrable, 14 Penn Plaza LLC, supra, 556 U.S. at 258 (ADEA); Parisi, supra, 710 F.3d at 487 (Title VII); see also Hamzaraj, supra, 2016 WL 3571387, at *4 (New York State Human Rights Law and Title VII).

Dixon now argues that the EFASA places sexual harassment claims such as hers beyond compelled arbitration (Docket No. 7, Pl. Memo. at 9-10).  The EFASA, however, only applies prospectively to sexual assault and sexual harassment claims arising on and after the Act's effective date of March 3, 2022, Pub. L. No. 117-90, Sec. 3; Gibson v. Giles Chem. Corp., No. 1:20-cv-394-MOC-WCM, 2022 WL 1446805, at *1 (W.D.N.C. May 6, 2022) (Docket No. 11, Def. Reply Memo. at 6).  The EFASA does not bar arbitration of Dixon's 2017-20 claims here.

This Act also does not preclude arbitration of claims under other sex and age discrimination claims, such as Dixon's allegations of disparate treatment because of her age and gender, that do not allege sexual assault or harassment.

Absent the EFASA, New York's CPLR arbitration provision remains preempted as being inconsistent with federal law, see Tantaros v. Fox News Network, LLC, 12 F.4th 135, 143-45 (2d Cir. 2021); see also Vincent C. Alexander, Impact of the Federal "Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act", CPLR 7515 Supplemental Practice Commentaries (2022).  Thus, there are no statutory bars (either federal or state) to arbitration of Dixon's claims.

### 3.   Defendant Has an Enforceable Arbitration Agreement with Dixon

Applying the factors for compelling arbitration, <u>Abdullayeva</u>, <u>supra</u>, 928 F.3d at 221-22, this Court finds that Defendant has a valid arbitration agreement with Dixon, despite her not signing it or affirmatively adopting it.   Dixon's failure to opt out and continuing employment with Dollar Tree formed her assent to the Agreement.   Her claims fall within the scope of that Agreement and the federal statutes Dixon asserts do not preclude arbitration of these claims.  All of Dixon's claims are subject to arbitration. Therefore, Defendant can compel arbitration of Dixon's claims under that Agreement and Defendant's Motion to Compel Arbitration (Docket No. 3) is granted.

Compelling arbitration here, this Court next considers whether to stay or dismiss this action.

### 4.   This Action Is Dismissed Rather Than Stayed Pending Arbitration

Since all of Dixon's claims are subject to arbitration, dismissal of this action (rather than staying it pending arbitration) is proper.   If this action were merely stayed, once the parties arbitrate Dixon's claims, there would be nothing left to adjudicate, <u>see</u> <u>Rubin</u>, <u>supra</u>, 457 F. Supp. 2d at 198.  Defendant's Motion to Dismiss (<u>id.</u>) is granted.

## IV.    Conclusion

Sally Dixon did not opt out of Dollar Tree's Arbitration Agreement and continued to work for Defendant under its terms.   Therefore, Plaintiff adopted the Arbitration Agreement.  That Arbitration Agreement is valid and enforceable, covering by its terms Dixon's employment discrimination and harassment claims and the lack of statutory exception.  Thus, by terms of that Arbitration Agreement, Dixon's disputes are subject to arbitration.  Defendant's Motion to Compel Arbitration (Docket No. 3) is granted.

On whether to stay this action pending arbitration or dismiss it, all of Dixon's claims are subject to arbitration leaving nothing for judicial determination. Defendant's alternative Motion to Dismiss (id.) is granted and this case is dismissed.

## V.    Orders

IT HEREBY IS ORDERED, that Defendant's Motion to Compel Arbitration (Docket No. 3) is GRANTED.

FURTHER, Defendant's alternative Motion to Dismiss (id.) is GRANTED rather than staying this case pending arbitration.

FURTHER, the Court Clerk is DIRECTED to enter judgment closing this case.

SO ORDERED.


Dated:      March 7, 2023
            Buffalo, New York


                                             s/William M. Skretny
                                            WILLIAM M. SKRETNY
                                            United States District Judge